1   AMBER L. ECK (177882)
       ambere@haelaw.com
2   ALREEN HAEGGQUIST (221858)
       alreenh@haelaw.com
3   ROBERT PRINE (312432)
       robertp@haelaw.com
4   HAEGGQUIST & ECK, LLP
5   225 Broadway, Suite 2050
    San Diego, CA  92101
6   Telephone: (619) 342-8000
7   Facsimile: (619) 342-7878
8

9   Attorneys for Plaintiff and the Proposed Class

10

11             UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAJ GROUP, INC. d/b/a EARL OF SANDWICH, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No.:  '20CV1620 JM    MDD<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES<br><br><br>DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

## **TABLE OF CONTENTS**

I.   NATURE OF THE ACTION ............................................................ 1

II.   THE PARTIES ............................................................................. 3

    A.   Plaintiff ............................................................................. 3

    B.   Defendant ........................................................................... 3

III.   JURISDICTION AND VENUE ...................................................... 3

IV.   FACTUAL BACKGROUND ........................................................... 5

    A.   The COVID-19 Pandemic ................................................... 5

    B.   Governments Across the Country Order Everyone to "Stay at Home" and Non-Essential Businesses to Close ..................... 6

    C.   The Losses from These Business Closures Are Covered Business Interruptions Under Liberty Mutual's Insurance Policies .......... 8

    D.   Exclusions ......................................................................... 11

    E.   Liberty Mutual's Denial of Plaintiff's and Other Policyholders' Insurance Claims ............................................................. 13

V.   CLASS ACTION ALLEGATIONS ................................................ 15

    A.   Numerosity: Rule 23(a)(1) ................................................ 16

    B.   Typicality: Rule 23(a)(3) .................................................. 17

    C.   Adequacy: Rule 23(a)(4) ................................................... 17

    D.   Commonality and Predominance: Rule 23(a)(2) ................... 17

    E.   Superiority of Class Action: Rule 23(b)(3) .......................... 18

    F.   Rule 23(b)(2) Certification ................................................ 20

VI.   CAUSES OF ACTION ................................................................ 20

    COUNT I – Declaratory Judgment – Business Income Coverage (On Behalf of the Nationwide Class and California Sub-Class) ............................................................................... 20

i

COUNT II – Breach of Contract – Business Income Coverage (On Behalf of the Nationwide Class and California Sub-Class) ....... 22

COUNT III – Declaratory Judgment – Civil Authority Coverage (On Behalf of the Nationwide Class and California Sub-Class)…….. ................................................................................ 23

COUNT IV – Breach of Contract – Civil Authority Coverage (On Behalf of the Nationwide Class and California Sub-Class)…….. ................................................................................ 25

COUNT V – Declaratory Judgment – Extra Expense Coverage (On Behalf of the Nationwide Class and California Sub-Class)…….. ................................................................................ 26

COUNT VI – Breach of Contract – Extra Expense Coverage (On Behalf of the Nationwide Class and California Sub-Class)…….. ................................................................................ 28

COUNT VII – Unfair Business Practices Under Bus. & Prof. Code §17200, *et seq*. (On Behalf of Plaintiff and the California Sub-Class)................................................................ 29

VII.    PRAYER FOR RELIEF ....................................................... 31

VIII.   JURY DEMAND ................................................................. 32

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

Plaintiff JAJ Group, Inc. d/b/a Earl of Sandwich ("Earl of Sandwich" or "Plaintiff"), on behalf of itself and all others similarly situated, brings this class action against Defendant Liberty Mutual Insurance Company ("Defendant" or "Liberty Mutual"), and alleges as follows based on personal knowledge as to itself and upon information and belief as to other matters based on their counsel's investigation. Plaintiff believes additional evidentiary support exists for its allegations, given an opportunity for discovery.

## I.   NATURE OF THE ACTION

1.     Plaintiff and other businesses nationwide purchased commercial property insurance to protect their businesses if they had to temporarily shut down. They reasonably believed their policies would help protect their businesses in the unlikely event the government ordered them to stop or severely restrict operations (in connection with a pandemic or any other Covered Cause of Loss). However, after collecting billions of dollars in premiums, Defendant and other insurers are now categorically refusing to pay these legitimate claims for business interruption coverage.

2.     California and the vast majority of states across the country have entered civil authority orders requiring residents to "stay-at-home" or "shelter-in-place" and suspending or severely limiting business operations of non-essential businesses that interact with the public and/or provide social gathering places (collectively, the "COVID-19 Civil Authority Orders").

3.     These broad COVID-19 Civil Authority Orders have been financially devastating for most non-essential businesses, especially salons, restaurants, retail stores, entertainment venues, and other small, medium, and large businesses who have been forced to close, furlough employees, and submit to a sudden shutdown of operations and cash flow that threatens their survival.

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

4.     Many businesses purchased insurance to protect against losses from catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, or when access to the premises is prohibited because of direct physical loss or damage to the property, or by a civil authority order that restricts or prohibits access to the property. This coverage, commonly known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

5.     Despite the provision of business interruption coverage in these policies, Liberty Mutual is denying its obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insureds' property arising from the COVID-19 Civil Authority Orders.

6.     Plaintiff brings this action on behalf of a Nationwide Class and a California Sub-Class (defined below in ¶¶61 a and b) of policyholders who purchased standard Liberty Mutual commercial property insurance policies which provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put into place by COVID-19 Civil Authority Orders.

7.     This action seeks a declaratory judgment that Liberty Mutual is contractually obligated to pay business interruption losses incurred due to Plaintiff's and other Class members' compliance with COVID-19 Civil Authority Orders. In addition, Plaintiff seeks damages, attorneys' fees and costs, and any other relief that this Court deems equitable and just, arising out of Liberty Mutual's breach of contract and wrongful conduct.

8.     Specifically, Plaintiff, individually and on behalf of the Nationwide Class and California Sub-Class brings claims for: (1) declaratory judgment regarding

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

business income coverage; (2) breach of contract regarding business income coverage; (3) declaratory judgment regarding civil authority coverage; (4) breach of contract regarding civil authority coverage; (5) declaratory judgment regarding extra expense coverage; (6) breach of contract regarding extra expense coverage; and (7) unfair business practices under Business & Professions Code §17200, *et seq*.

## II.    THE PARTIES

### A.    Plaintiff

9.      Plaintiff JAJ Group, Inc. d/b/a Earl of Sandwich's principal place of business is at 690 First Avenue, San Diego, California 92101. Earl of Sandwich is owned by JAJ Group, Inc., and was forced to close entirely on March 19, 2020 due to the applicable COVID-19 Civil Authority Orders.

### B.    Defendant

10.     Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. Liberty Mutual owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

11.     Liberty Mutual issued the Liberty Mutual Policy No. BZS (21) 59 08 27 60 to Earl of Sandwich for the policy period of February 18, 2020 to February 18, 2021 (the "Policy").

## III.   JURISDICTION AND VENUE

12.     This Court has original jurisdiction over this action under 28 U.S.C. §1332(a) as well as the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as to the named Plaintiff and every member of the Nationwide Class and California Sub-Class, because both of the proposed Classes contain more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class members reside in

HAEGGQUIST & ECK, LLP

California and are therefore diverse from Defendant. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

13.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction for the purpose of this Complaint. This Court has personal jurisdiction over Defendant because it does a substantial amount of business in California, including in this District, is authorized to conduct business in California, including in this District, and/or has intentionally availed itself of the laws and markets of this District through the use, promotion, sale, marketing, and/or distribution of its products and services at issue in this Complaint. Defendant's liability to Plaintiff, the Nationwide Class, and the California Sub-Class arises from and relates to Defendant's conduct within the state of California. As set forth herein, Defendant acted within California to sell various business insurance policies within the state of California. Thus, Defendant has purposefully availed itself of the benefits and protections of the state of California in conducting its unlawful enterprise, which purposeful availment constitutes sufficient minimum contacts with the state of California that the exercise of personal jurisdiction over Defendant with regard to the claims of Plaintiff, the Nationwide Class, and the California Sub-Class, and does not violate Due Process.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District. Alternatively, venue is proper under 28 U.S.C. §1391(b)(3) because this Court has personal jurisdiction over Defendant.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

## IV.   FACTUAL BACKGROUND

### A.   The COVID-19 Pandemic

15.   COVID-19 is an infectious disease caused by a recently discovered novel coronavirus known as SARS-CoV-2 ("Coronavirus" or "COVID-19"). The first instances of the disease spreading to humans were diagnosed in or around December 2019.

16.   On January 30, 2020, the World Health Organization ("WHO") declared that the Coronavirus outbreak constituted a public health emergency of international concern.

17.   On March 11, 2020, the WHO declared Coronavirus a worldwide pandemic.

18.   On March 13, 2020, President Trump declared the COVID-19 pandemic to be a national emergency.

19.   On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") and national Coronavirus Task Force issued guidance to the American public advising individuals to adopt social distancing measures.

20.   As of August 18, 2020, the number of confirmed cases of COVID-19 is over 21 million worldwide, with nearly 800,000 deaths,[1] with the United States dealing with nearly 5.5 million confirmed cases and over 169,000 reported deaths – more than any other country in the world.[2]

---

[1]   *See Coronavirus disease (COVID-19) Situation Report – 209*, World Health Organization,   https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited August 18, 2020).

[2]   *See Cases in the U.S.*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html   (last visited August 18, 2020).

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

**B.     Governments Across the Country Order Everyone to "Stay at Home" and Non-Essential Businesses to Close**

21.     On March 4, 2020, California Governor Gavin Newsom declared a state of emergency and on March 12, 2020, issued an executive order directing California residents to cancel large non-essential gatherings.

22.     On March 16, 2020, San Diego's mayor, Kevin Faulconer issued Executive Order No. 2020-1, prohibiting any gathering of 50 or more people and discouraging all non-essential gatherings of any size. On April 30, 2020, Mayor Faulconer issued Executive Order 2020-3, extending the executive order until May 31, 2020.[3]

23.     On March 19, 2020, Governor Newsom issued Executive Order N-33-20, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed" for essential service and engage in strict social distancing. The Order incorporated by reference California Government Code §8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment." *Id.*

24.     All California businesses not deemed essential, including Earl of Sandwich, were ordered to close their doors.

---

[3]     *See City of Executive Order No. 2020-3 By the Mayor*, the City of San Diego, https://www.sandiego.gov/sites/default/files/mkf_executive_order_2020-04-30-2020_3.pdf (last visited August 18, 2020).

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

25.     On June 15, 2020[4] and June 22, 2020,[5] Governor Newsom issued Executive Orders extending provisions of prior executive orders another 60 days.

26.     On July 13, 2020, due to a surge in coronavirus cases, Governor Newsom announced that he was re-imposing restrictions on many indoor businesses statewide, including hair salons and barber shops, and imposing additional restrictions on businesses in 30 counties that had been on monitoring list for three consecutive days, including San Diego.[6]

27.     Other states around the Country have implemented similar orders, requiring large scale business closures and imposing other limitations on businesses that prevent them from operating or limit their operations.

28.     For example, on March 16, 2020, New York Governor Andrew Cuomo, New Jersey Governor Phil Murphy, and Connecticut Governor Ned Lamont ordered the closure of all gyms, movie theaters, bars, and casinos. They also ordered all restaurants to close except for take-out and delivery orders.

29.     Altogether, 49 state governments have enacted at least one civil authority order prohibiting or severely limiting restaurants and other non-essential businesses. In addition to California, all but six states have enacted COVID-19 Civil Authority Orders, including "stay-at-home" or "shelter-in-place" orders; 35 states have closed all non-essential businesses, and other states are taking measures to limit business operations.  All 50 states have closed schools, and all but one state (South Dakota) has closed restaurants and bars for services other than take-out and delivery.

---

[4] https://www.gov.ca.gov/wp-content/uploads/2020/06/6.15.20-EO-N-69-20-text.pdf
[5] https://www.gov.ca.gov/wp-content/uploads/2020/06/6.22.20-EO-N-70-20-text.pdf
[6] https://www.npr.org/sections/coronavirus-live-updates/2020/07/13/890602390/california-closes-indoor-businesses-statewide-as-covid-19-cases-surge

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

**C.     The Losses from These Business Closures Are Covered Business Interruptions Under Liberty Mutual's Insurance Policies**

30.     Liberty Mutual's insurance policies issued to Plaintiff and the Class Members are "all risk" commercial property policies that cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

31.     Plaintiff and Class Members do not participate in the drafting or negotiating of their policies with Liberty Mutual.

32.     The Policy, as well as the policies of other Class Members (the "Policies"), include standard forms used by Liberty Mutual for all insureds having applicable coverage.

33.     Among the coverages provided by the Policy was business interruption insurance, which, generally, would indemnify Plaintiff for lost income and profits if its business was shut down.

34.     The Businessowners Coverage Form, BP 00 03 07 13) in the Policy provides coverage for Plaintiff as follows:

**A.     Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

***

**3.     Covered Causes of Loss**

> Direct physical loss unless the loss is excluded or limited under Section I – Property.

35.     In the same form, the Policy provided the following Additional Coverage for Plaintiff for Business Income:

**5.     Additional Coverages**

***

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

**f.** **Business Income**

    **(1)**   Business Income

        **(a)**   We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

        **(b)**   We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

***

    **(2)**   **Extended Business Income** [as described in the policy].

36.   In addition, Plaintiff's Policy provided coverage for "Extra Expense" as follows:

**g.** **Extra Expense**

    **(1)**   We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include

9

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a)   The portion of the building which you rent, lease or

[(b)-(c) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.]

**(2)   Extra Expense** means expense incurred:

**(a)**   To avoid or minimize the suspension of business and to continue "operations":

**(i)**   At the described premises; or

**(ii)**   At temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)**   To minimize the suspension of business if you cannot continue "operations".

37.   Under Plaintiff's Policy, Business Income is defined as:

(i)   Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage has occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii)   Continuing normal operating expenses incurred, including payroll.

10

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

\*\*\*

**(i)    Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

  **(1)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

  **(2)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

\*\*\*

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**D.    Exclusions**

38.    The interruption of Plaintiff's and other Class members' businesses was not caused by any of the exclusions set forth in the applicable policies, including Plaintiff's Policy.

39.    Plaintiff's Policy contains a "**Virus or Bacteria**" exclusion which excludes "loss or damage" "caused by or resulting from" "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

40.   Plaintiff's "Virus or Bacteria" Exclusion does not exclude Plaintiff's losses because the efficient proximate cause of losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiff's insured property.

41.   Plaintiff's Policy also contains a "**Pollution**" exclusion which excludes:

> [L]oss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

42.   "Pollutants" are defined by the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

43.   Plaintiff's "Pollution" exclusion does not exclude Plaintiff's losses because the coronavirus does not constitute a "pollutant" under the Policy, and because the efficient proximate cause of losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiff's insured property.

44.   Plaintiff and all similarly situated Class Members have suffered a direct physical loss of and damage to their properties because they have been unable to use their properties for their intended purpose.

45.   As drafter of the Policy, if Liberty Mutual had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered, it could have used explicit language stating such a definition of "physical loss or damage." It did not do so.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

**E.**   **Liberty Mutual's Denial of Plaintiff's and Other Policyholders' Insurance Claims**

46.   On or about April 21, 2020, Plaintiff Earl of Sandwich requested insurance coverage from Liberty Mutual relating to the closure of its business due to the Covid pandemic.  Liberty Mutual notified Earl of Sandwich by letter less than one week later, on April 27, 2020, that it was denying Earl of Sandwich' claim for business interruption losses.

47.   Liberty Mutual denied Plaintiff's claim without any inspection or review of either of Plaintiff's physical location or documents concerning its business activities in 2020.

48.   Liberty Mutual has thereby waived any right to inspect these premises, deny coverage for any reason related to conditions at this location, or raise any defense related to conditions at this location or facts specific to Plaintiff.

49.   The speed with which Liberty Mutual denied Plaintiff's claims indicates that Liberty Mutual could not have engaged in a good faith or reasonable investigation of the claims which included assessment of facts or issues relevant to Plaintiff.

50.   Liberty Mutual's denial was wrongful because Earl of Sandwich had suffered direct physical loss or damage within the definition of the Policy.

51.   Liberty Mutual accepted the premiums paid by Plaintiff with no intention of providing lost business income, physical damage, civil authority, or other applicable coverage for claims like these submitted by Plaintiff and the proposed Class members, and which were denied by Liberty Mutual.

52.   Liberty Mutual's rejection of Plaintiff's claim was part of Liberty Mutual's policy to limit its losses during this pandemic, despite the fact that the policy provides coverage for losses due to loss of use of property and from closure orders issued by civil authorities (among other coverage).

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

53.     Although industry trade groups have argued that insurance companies do not have the funds to pay claims related to the Coronavirus and will require government assistance, the reality is that insurers are simply trying to minimize their exposure. Collectively, the U.S. property-casualty insurance industry has about $800 billion in surplus, the industry term for assets minus liabilities.[7]

54.     Liberty Mutual collected more than $35.6 billion in insurance premiums for property related insurance in 2018 alone.[8] Notwithstanding this, it appears to be categorically denying claims brought by businesses ordered to close following the Coronavirus.  This strategy, and its public requests for government assistance, suggest that its true goal is minimizing payments by any means necessary.

55.     Liberty Mutual's wrongful denials of Plaintiff's claim was not an isolated incident. Rather, on information and belief, Liberty Mutual has engaged in the same misconduct with claims submitted by numerous Liberty Mutual's insureds who have suffered losses related to the Coronavirus pandemic and submitted claims which were categorically denied.

56.     Plaintiff' claim and those of the proposed Class all arise from a single course of conduct by Liberty Mutual: its systematic and blanket refusal to provide any coverage for business losses related to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations.

---

[7]     Leslie Scism and Brody Mullins, *The Legal Fight Between Insurers and Businesses is Expanding*, *The Wall Street Journal*, (April 29, 2020), available at https://www.wsj.com/articles/the-legal-fight-between-insurers-and-businesses-is-expanding-11588166775?mod=searchresults&page=1&pos=3 (last visited August 18, 2020).

[8]     *See Facts + Statistics – Industry overview*, Insurance Information Institute, available at https://www.iii.org/fact-statistic/facts-statistics-industry-overview (last visited August 18, 2020).

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

57.     Liberty Mutual's wrongful conduct has caused significant damage, and if left unchecked will continue to cause significant damage, to Plaintiff and the other members of the proposed Class.

58.     Liberty Mutual's categorical treatment, failure to investigate in good faith, and denial of Plaintiff's and the Class members' claims appears to be part of a broader strategy being employed by the insurance industry generally, to broadly deny claims for business interruption coverage related to the Coronavirus pandemic, as has been widely reported by the media and resulted in numerous lawsuits brought by businesses against property insurance companies throughout the country.

59.     Many small businesses that maintain commercial policies with business interruption coverage will have significant uninsured losses absent declaratory relief from this Court. Indeed, even if state and local governments re-open, small businesses will almost certainly still be under social-distancing mandates, and salons such as Earl of Sandwich, will continue to experience diminishing revenues.

60.     A declaratory judgment is necessary to determine that the business income loss and extra expense coverage provided in standard Liberty Mutual commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from Civil Authority Orders, and to prevent Plaintiff and similarly situated Class members from being denied critical coverage for which they have paid premiums.

## V.     CLASS ACTION ALLEGATIONS

61.     Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(a),(b)(2), and (b)(3) Plaintiff brings claims on behalf of itself and on behalf of all other persons similarly situated, and seek to represent the following "Nationwide Class" and "California Sub-Class":

(a)     The Nationwide Class is defined as:

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

All persons and entities who have entered into a standard commercial property insurance policy with a Liberty Mutual insurance carrier to insure property in the United States, where such policy provides for business income loss and extra expense coverage and does not exclude coverage for pandemics, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

(b)     The California Sub-Class is defined as:

All persons and entities who have entered into a standard commercial property insurance policy with a Liberty Mutual insurance carrier to insure property in California, where such policy provides for business income loss and extra expense coverage and does not exclude coverage for pandemics, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

62.     Excluded from each of the Classes are the Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

63.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes after discovery and before the Court determines whether class certification is appropriate.

64.     Class certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

**A.     Numerosity: Rule 23(a)(1)**

65.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The Classes number at least in the hundreds and consist of geographically dispersed business entities who are insured for business interruption losses. Liberty Mutual sells many insurance policies nationwide and in the State of California and, therefore, joinder of the Class members is impracticable.

HAEGGQUIST & ECK, LLP

16

66.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Liberty Mutual's or its agents' books and records. Plaintiff anticipates providing appropriate notice to the certified Classes in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**B.     Typicality: Rule 23(a)(3)**

67.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same standard policy provisions entered into with Liberty Mutual. Each Class members' insurance policy contains the same form providing coverage for business income loss. None of the forms exclude coverage due to a governmental action intended to reduce the effect of the ongoing global pandemic. As a result, a declaratory judgment as to the rights and obligations under Plaintiff's policies will address the rights and obligations of all Class members.

**C.     Adequacy: Rule 23(a)(4)**

68.    Plaintiff will fairly and adequately represent and protect the interests of the Class and California Sub-Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, including insurance coverage and other consumer protection litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel have interest that conflict with the interests of the other Class members.

**D.     Commonality and Predominance: Rule 23(a)(2)**

69.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to each of the Classes. These

HAEGGQUIST & ECK, LLP

17

common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Classes include, but are not limited to:

(c)     Whether there is an actual controversy between Plaintiff and Liberty Mutual as to the rights, duties, responsibilities, and obligations of the parties under the business interruption coverage provisions in standard commercial property insurance policies;

(d)     Whether measures to reduce the spread of the COVID-19 pandemic are excluded from Plaintiff's and Class members' standard commercial property insurance policies;

(e)     Whether the measures put in place by civil authorities to stop the spread of COVID-19 caused physical loss or damage to the covered commercial properties;

(f)     Whether Liberty Mutual has breached the insurance policies with business interruption coverage by denying or intending to deny claims for coverage;

(g)     Whether Liberty Mutual's violations of the standard commercial property insurance policies were committed intentionally, recklessly, or negligently and;

(h)     Whether Plaintiff and Class members suffered damages as a result of Liberty Mutual's breach.

**E.     Superiority of Class Action: Rule 23(b)(3)**

70.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members. The joinder of individual Class members is impracticable because of the large number of Class members who purchased commercial property insurance policies from Liberty Mutual.

1     71.    Because a declaratory judgment as to the rights and obligations under the

2     uniform insurance policies will apply to all Class members, most or all Class members

3     would have no rational economic interest in individually controlling the prosecution

4     of specific actions. The burden imposed on the judicial system by individual litigation,

5     and to Liberty Mutual, by even a small fraction of the Class members, would be

6     enormous.

7     72.    In comparison to piecemeal litigation, class action litigation presents far

8     fewer management difficulties, conserves the resources of both the judiciary and the

9     parties, and protects the rights of each Class member more effectively. The benefits

10    to the parties, the Court, and the public from class action litigation substantially

11    outweigh the expenses, burdens, inconsistencies, economic infeasibility, and

12    inefficiencies of individual litigation. Class adjudication is superior to other

13    alternatives under Fed. R. Civ. P. 23(b)(3)(D). Class treatment will also avoid the

14    substantial risk of inconsistent factual and legal determinations on the many issues in

15    this lawsuit.

16    73.    Fed. R. Civ. P. Rule 23 provides the Court with the authority and

17    flexibility to maximize the efficiencies and benefits of the class mechanism and

18    reduce management challenges. The Court may, on motion of Plaintiff or on its own

19    determination, certify nationwide and statewide classes for claims sharing common

20    legal questions; use the provisions of Rule 23(c)(4) to certify particular claims, issues,

21    or common questions of law or of fact for class-wide adjudication; certify and

22    adjudicate bellwether class claims; and use Rule 23(c)(5) to divide any class into Sub-

23    Classes.

24    74.    There are no individualized factual or legal issues for the court to resolve

25    that would prevent this case from proceeding as a class action. Class action treatment

26    will allow those who are similarly situated to litigate their claims in the manner that

27    is most efficient and economical for the parties and the court. Plaintiff is unaware of

28

HAEGGQUIST & ECK, LLP

19

any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**F.     Rule 23(b)(2) Certification**

75.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2). The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant.

76.     In addition, the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

77.     Defendant has also acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

**VI.    CAUSES OF ACTION**

**COUNT I**
**Declaratory Judgment – Business Income Coverage**
**(On Behalf of the Nationwide Class and California Sub-Class)**

78.     Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

79.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

80.     Plaintiff's Policy, as well as those of the other Class members, are contracts under which Liberty Mutual was paid premiums in exchange for its contractual agreement to pay Plaintiff's, and the other Class members', losses for claims covered by the policies.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

81.     As part of standard business interruption coverage, Liberty Mutual agreed to pay for insureds' loss of Business Income sustained due to the necessary suspension of their operations during the "period of restoration." Liberty Mutual also agreed to pay its insureds' actual loss of Business Income sustained due to the necessary "suspension of [their] operations" during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred," as well as "[c]ontinuing normal operating expenses incurred, including payroll."

82.     The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiff's and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiff's and the other Class members' Liberty Mutual policies.

83.     Plaintiff and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide the coverage to which Plaintiff and Class members are entitled.

84.     Liberty Mutual has denied Plaintiff's and other Class members' claims for business interruption losses caused by COVID-19 Civil Authority Orders on a uniform and class-wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

85.     An actual case or controversy exists regarding Plaintiff's and the other Class members' rights and Liberty Mutual's obligations under the policies to pay for

losses incurred by Plaintiff and the other Class members in connection with the business interruption caused by COVID-19 Civil Authority Orders.

86.    Pursuant to 28 U.S.C. §2201, Plaintiff and other Class members seek a declaratory judgment from this Court as follows:

(a)    Plaintiff's and the other Class members' Business Income losses incurred due to COVID-19 Civil Authority Orders are insured losses under their Liberty Mutual policies; and

(b)    Liberty Mutual is obligated to pay Plaintiff and other Class members for the full amount of their Business Income losses (up to the maximum allowable amount under the policies) incurred in connection with the COVID-19 Civil Authority Orders during the period of restoration and the necessary interruption of their businesses stemming therefrom.

**COUNT II**
**Breach of Contract – Business Income Coverage**
**(On Behalf of the Nationwide Class and California Sub-Class)**

87.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

88.    Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

89.    Plaintiff's Policy, as well as those of other Class members, are contracts under which Liberty Mutual was paid premiums in exchange for its promise to pay Plaintiff's, and the other Class members', losses for claims covered by the policies.

90.    As part of standard business interruption coverage, Liberty Mutual agreed to pay for insureds' actual loss of Business Income sustained due to the necessary suspension of their operations during the "period of restoration." Liberty Mutual also agreed to pay its insureds' actual loss of Business Income sustained due to the necessary "suspension of [their] operations" during the "period of restoration"

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

caused by direct physical loss or damage. "Business Income" under the policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred," as well as "[c]ontinuing normal operating expenses incurred, including payroll."

91.     The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiff's and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiff's and the other Class members' Liberty Mutual policies.

92.     Plaintiff and the other Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Liberty Mutual and/or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms. By denying coverage for any Business Income loss incurred by Plaintiff or other Class members as a result of the COVID-19 Civil Authority Orders, Liberty Mutual has breached its coverage obligations under the policies.

93.     As a result of Liberty Mutual's breaches of contract, Plaintiff and other Class members have sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

## COUNT III
### Declaratory Judgment – Civil Authority Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

94.     Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

96.   Plaintiff's Policy, as well as those of other Class members, are contracts under which Liberty Mutual was paid premiums in exchange for its promise to pay Plaintiff's, and other Class members', losses for claims covered by the policies.

97.   Plaintiff's Policy provides for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Accordingly, the COVID-19 Civil Authority Orders triggered the Civil Authority provision under Plaintiff's and the other Class members' Liberty Mutual policies.

98.   Plaintiff and Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual and/or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

99.   Liberty Mutual has denied claims related to COVID-19 on a uniform and class-wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

100.   An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff and other Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and other Class members in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

HAEGGQUIST & ECK, LLP

24

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

101.   Pursuant to 28 U.S.C. §2201, Plaintiff and other Class members seek a declaratory judgment from this Court declaring the following:

(a)   Plaintiff's and other Class members' Civil Authority losses incurred in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom are insured losses under their policies; and

(b)   Liberty Mutual is obligated to pay Plaintiff and other Class members for the full amount of their Civil Authority losses (up to the maximum allowable amount under the policies) incurred in connection with the COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

## COUNT IV
### Breach of Contract – Civil Authority Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

102.   Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

103.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

104.   Plaintiff's Policy, as well as those of other Class members, are contracts under which Liberty Mutual was paid premiums in exchange for its promise to pay Plaintiff's, and the other Class Members', losses for claims covered by the policies.

105.   Plaintiff's Policy provides for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Accordingly, the COVID-19 Civil Authority Orders triggered the Civil Authority

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

provision under Plaintiff's and the other Class members' Liberty Mutual policies.

106.   Plaintiff and the other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual and/or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms. By denying coverage for any business losses incurred by Plaintiff and other Class members in connection with the COVID-19 Civil Authority Orders, Liberty Mutual has breached its coverage obligations under the policies.

107.   As a result of Liberty Mutual's breaches of contract, Plaintiff and other Class members have sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

**COUNT V**
**Declaratory Judgment – Extra Expense Coverage**
**(On Behalf of the Nationwide Class and California Sub-Class)**

108.   Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

109.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and the California Sub-Class.

110.   Plaintiff's Policy, as well as those of other Class Members, are contracts under which Liberty Mutual was paid premiums in exchange for its promise to pay Plaintiff's, and other Class members', losses for claims covered by the policies.

111.   Plaintiff's Policy provides that Liberty Mutual would pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "[t]o avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

property. Due to the COVID-19 Civil Authority Orders, Plaintiff and other Class members incurred Extra Expense at their Covered Properties.

112.   Plaintiff and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual and/or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

113.   Liberty Mutual has denied claims related to COVID-19 on a uniform and class-wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

114.   An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Liberty Mutual's obligations under the policies to reimburse Plaintiff and the other Class members for the full amount of Extra Expense losses incurred by Plaintiff and Class members in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

115.   Pursuant to 28 U.S.C. §2201, Plaintiff and other Class members seek a declaratory judgment from this Court declaring the following:

(c)   Plaintiff's and other Class members' Extra Expense losses incurred in connection with the COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom are insured losses under their policies; and

(d)   Liberty Mutual is obligated to pay Plaintiff and other Class members for the full amount of their Extra Expenses losses (up to the maximum allowable amount under the policies) in connection with the COVID- 19 Civil

HAEGGQUIST & ECK, LLP

Authority Orders and the necessary interruption of their businesses stemming therefrom.

## COUNT VI
### Breach of Contract – Extra Expense Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

116.   Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

117.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

118.   Plaintiff's Policy, as well as those of the other Class members, are contracts under which Liberty Mutual was paid premiums in exchange for its promise to pay Plaintiff's, and the other Class members', losses for claims covered by the policy.

119.   Plaintiff's Policy provides that Liberty Mutual agreed to pay necessary Extra Expense that it incurred during the "period of restoration" that would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "[t]o avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace property. Due to the COVID-19 Civil Authority Orders, Plaintiff and other Class members incurred Extra Expense at their Covered Properties.

120.   Plaintiff and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Liberty Mutual and/or Liberty Mutual is estopped from asserting them. Yet Liberty Mutual has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms.

121.   By denying coverage for any business losses incurred by Plaintiff and other Class members in connection with the COVID-19 Civil Authority Orders, Liberty Mutual has breached its coverage obligations under the policies.

122.   As a result of Liberty Mutual's breaches of the policies, Plaintiff and the other Class members have sustained substantial damages for which Liberty Mutual is liable in an amount to be established at trial.

**COUNT VII**
**Unfair Business Practices Under Bus. & Prof. Code §17200, *et seq*.**
**(On Behalf of Plaintiff and the California Sub-Class)**

123.   Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

124.   Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

125.   By its conduct, Liberty Mutual has engaged in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code §17200, *et seq*. (the "UCL")

126.   Liberty Mutual's conduct violates the "unlawful" prong of the UCL because it violated the letter and spirit of California's Insurance Code, including California Insurance Code §790, *et seq*. because Liberty Mutual failed or refused to perform a fair, objective, and thorough investigation of Plaintiff's and the California Sub-Class members' claims.   Liberty Mutual denied Plaintiff's and the California Sub-Class members' claims as part of Liberty Mutual's policy of categorically denying all business interruption claims related to Coronavirus and ignored other California requirements concerning the proper and fair evaluation of claims and interpretations of its policies. Liberty Mutual's conduct also constituted breach of contract.

HAEGGQUIST & ECK, LLP

29
COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

127.   Liberty Mutual's conduct violates the "unfair" prong of the UCL, including, but not limited to, Liberty Mutual's: (a) categorical and wrongful denial of Plaintiff's and the California Sub-Class members' claims; (b) failure and refusal to perform a fair, objective, good-faith, and thorough investigation of the claims as directed by the California Insurance Code; (c) denial of Plaintiff's and the California Sub-Class members' claims as part of a policy of categorically denying claims related to Coronavirus; and (d) failing to interpret its policies in an equitable manner and/or up to the standards required by California law (including, but not limited to, California Insurance Code §790, *et seq*.).

128.   Liberty Mutual's conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the California Sub-class.

129.   Liberty Mutual's conduct also violates California public policy, including the policy reflected in California Insurance Code §790, *et seq*. and elsewhere in the California Insurance Code.

130.   Liberty Mutual's conduct violates the "fraudulent" prong of the UCL. Among other things, Liberty Mutual: (a) promised Plaintiff and the California Sub-Class coverage that was not provided and that Liberty Mutual had no intention of providing; (b) promised to evaluate each claim individually, reasonably, and in good faith, which Liberty Mutual did not do with respect to Plaintiff's and the California Sub-Class members' claims; and (c) falsely and misleadingly indicated to Plaintiff and the California Sub-Class that it was investigating in good faith (and had investigated in good faith) their claims, which Liberty Mutual did not do and knew that it did not do. Liberty Mutual collected Plaintiff's and the California Sub-Class members' premiums in exchange for coverage that was not provided, induced those premiums by promising to evaluate each claim individually, reasonably, and in good faith and did not, and denied Plaintiff's and the California Sub-Class members' claim

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

as part of a policy of categorically denying claims related to Coronavirus as part of a strategy to reduce its insurance payments related to Coronavirus.

131.  Liberty Mutual's fraudulent and deceptive conduct was false and misleading, had a tendency to deceive reasonable insureds, and did deceive Plaintiff and the California Sub-Class. Plaintiff and members of the California Sub-Class reasonably relied on Liberty Mutual's deceptions and omissions, including, but not limited to, by paying premiums to Liberty Mutual.

132.  By reason of Liberty Mutual's unlawful, unfair, and fraudulent conduct in violation of the UCL, Plaintiff and members of the California Sub-Class suffered and continue to suffer damages, including, but not limited to, premiums they have paid to Liberty Mutual and the non-receipt of insurance benefits that Liberty Mutual owes them.

133.  Plaintiff and the California Sub-Class are entitled to restitution from Liberty Mutual (with interest thereon), to disgorgement of all Liberty Mutual's profits arising out of its violations of the UCL (with interest thereon), and payment of benefits due to Plaintiff and members of the California Sub-Class that Liberty Mutual has wrongfully retained through its violations of the UCL.

134.  Pursuant to California Code of Civil Procedure §1021.5, Plaintiff is entitled to recover its reasonable attorneys' fees.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals and entities, prays for relief and judgment against Defendant as follows:

A.  Determining that this action is a proper class action under one or more provisions of Federal Rule of Civil Procedure 23, appointing Plaintiff to serve as a Class Representatives, and appointing its counsel to serve as Class Counsel;

B.  Issuing a Declaratory Judgment declaring the parties' rights and obligations under the insurance policy provisions at issue;

HAEGGQUIST & ECK, LLP

31

C.    Awarding Plaintiff and the Classes compensatory damages against Defendant, jointly and severally, for all damages sustained as a result of Defendant's breach of the policies in an amount to be proven at trial, including interest thereon;

D.    Awarding Plaintiff and the Classes pre-judgment and post-judgment interest as well as reasonable attorneys' fees and expenses incurred in this action; and

E.    Awarding such other relief as the Court may deem just and proper.

## VIII.  JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2020

HAEGGQUIST & ECK, LLP
AMBER L. ECK
ALREEN HAEGGQUIST
ROBERT PRINE

By: _____
AMBER L. ECK

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff and Proposed Class

HAEGGQUIST & ECK, LLP

32

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES